UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21283-CIV-MARRA/JOHNSON

CENTURY SURETY COMPANY

        Plaintiff

vs.

SEDUCTIONS, LLC d/b/a HOTTIES,
MAURICIO JAVIER ARANA-LANDEROS,
and BLANCA IRIS ARANA

        Defendants.
_____/

## ORDER AND OPINION

**THIS CAUSE** has been reassigned to the undersigned pursuant to Administrative Order 2008-36, and due to Senior District Judge Shelby Highsmith's decision to retire from the Federal Bench. Before the Court are Century Surety Company's Motion For Summary Judgment [DE 30] and Defendants/Counter Plaintiffs' Cross Motion For Final Summary Judgment [DE 43]. The Court has carefully considered the motions, responses, replies, supplemental filings, and oral argument of counsel.

### Introduction

On or about March 2, 2007, Mauricio Javier Arana-Landeros and Blanca Iris Arana (together "the Aranas") filed a personal injury lawsuit against Seductions, LLC d/b/a Hotties ("Seductions") in the Circuit Court of the Eleventh Judicial Circuit in and For Dade County, Case No. 07-06188CA06, seeking damages for alleged negligence on the part of Seductions (the "Underlying Action"). According to the

underlying complaint, on or about December 23, 2006, Mauricio Arana was a patron at Seductions when he was allegedly attacked and beaten by one or more security personnel of Seductions for refusing to leave the bar when it was closing at about 5:00 A.M.  DE 4-3, Ex. B ¶ 10.  In the Underlying Action, the Aranas seek compensation for Mr. Arana's severe bodily injuries that were allegedly caused by Seductions' various acts of negligence including, but not limited to, negligent training, negligent hiring, and negligent supervision of the personnel/bouncers who attacked him.  *See* DE 4, Counterclaim.[1]  Mr. Arana required emergency medical treatment after the attack and his medical expenses for these injuries are alleged to exceed one million dollars.

This is an action for declaratory judgment and reformation of an insurance contract.  Century Surety Company ("Century") seeks a judicial determination that its duty to defend and indemnify Seductions for the claims asserted in the Underlying Action is limited to the $25,000 sub-limit included in an Assault and Battery Endorsement in the subject insurance policy.  Alternatively, Century seeks

---

[1] Among other things, the Aranas allege that Seductions was negligent in the handling of the security matter, in allowing its personnel to assault and batter Mr. Arana, in failing to properly train and supervise its security personnel, and in failing to care for Mr. Arana when it was clear he needed medical attention.  Complaint ¶ 16.  The Aranas also allege that Seductions was negligent in failing to use reasonable care in hiring and retaining well-suited, trained, experienced and stable security personnel.  Complaint ¶ 22.  The Aranas further allege that Seductions knew or should have known the unsuitability of the security personnel at the time and before the date of the alleged beating, and that such unsuitability would result in damage to the business invitees of Seductions.  Complaint ¶ 24.

reformation of the insurance contract to include form number CGL 1704 (the "Exclusion") which precludes coverage for bodily injury arising out of an assault or battery, including claims for negligent employment, training, supervision, retention and investigation, which form was omitted from the policy when it was delivered to Seductions.

For purposes of Plaintiff's Motion for Summary Judgment and Defendant/ Counter Plaintiffs' Cross-Motion for Partial Summary Judgment, the parties agree to the relevant facts.[2] On the date of loss, Seductions was insured under a commercial general liability policy issued by Century, effective August 25, 2006 to August 25, 2007 (the "Policy").  Pursuant to an Assault and Battery Endorsement (the "Endorsement"), the Policy provided limited coverage for claims arising out of an assault or battery.  The limited coverage provides a $25,000 "per occurrence" sub-limit and $50,000 "aggregate" sub-limit.  The Endorsement expressly states that it "reinstates" on a limited basis the specific coverage excluded under form CGL 1704, the Assault and Battery Exclusion, which was never attached to the Policy.  The material dispute is in the conclusion to be drawn from the undisputed facts:  namely, the interpretation to be drawn from language contained within the Endorsement, and

---

[2] The parties do not agree to the reason the Exclusion was not made a part of the Policy.  Century states, "[d]ue to clerical error, inadvertence and/or mutual mistake, the Exclusion was not attached to the policy that was initially delivered to Seductions."  Defendants vehemently disagree that there was a mutual mistake and accuse Century of trying to back-graft an exclusion into the policy that would leave the insured without coverage.

whether the late-proffered Exclusion was intended by both Century and Seductions to exclude coverage for the specific types of claims at the time the policy was sold.[3]

## Standard of Review

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id*. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which the movant believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000), *cert. denied*, 534 U.S. 815 (2001).

In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. *Celotex*

---

[3] Since the Court finds that the plain meaning of the Endorsement limits Century's duty to defend and indemnify Seductions under the circumstances of this case to $25,000, it is unnecessary to address the reformation issue.

*Corp.*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party.  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

**Applicable Law**

"Under the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state."  *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F .3d 1224, 1227 (11th Cir. 2005)(quotation omitted).  "The construction of insurance contracts is governed by substantive state law."  *Sphinx Int'l, Inc.*, 412 F.3d at 1227 (quoting *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985)).  Thus, the Court evaluates the insurance policy in this case under Florida law.

**Declaratory Judgment**

Century states it is in doubt of its rights under the Policy and by its Complaint seeks a declaration of its rights and obligations with respect to the Underlying Action. Century believes that, under the Policy, its obligation to indemnify Seductions for all claims asserted in the Underlying Action is limited to the $25,000 as provided in the Limited Coverage - Assault & Battery Endorsement.  DE 1 at ¶ 29.  Specifically, Century wishes the Court to declare that the Endorsement, which expressly states that $25,000 is the policy limit for any claim "arising from" an assault and battery, is

applicable to the Underlying Action.

The Aranas maintain that the Assault and Battery Endorsement is not applicable to their negligence claims because the Policy's definition of "assault" qualifies it as an "intentional" tort, not a negligent act.  Because the claims of the Underlying Action involve negligence, and not an intentional tort such as assault and battery, the Aranas assert the claims do not fall under any of the policy exclusions, and Century is obligated to defend and indemnify Seductions in the Underlying Action in state court.  Defendants maintain that it is clear from the language of the Policy as a whole, including the Endorsement, the negligence coverage separately purchased under forms CGL 1711 0406 and CG1 1701 07075, and the fact that the Exclusion contained in form CGL 1704 was never made a part of the contract, that the $25,000 limitation applied only to the intentional acts defined on the face of the Endorsement, but not to the negligence for which Seduction separately purchased coverage.  Defendants also argue that the Policy language regarding the limits of medical coverage is ambiguous and is thus subject to a general aggregate limit of $2,000,000.

1. **Endorsement**

The Endorsement in question is one of the 30 forms listed on the Schedule of Forms and Endorsements of the Policy.  It is titled "Limited Coverage - Assault & Battery," (the "Endorsement"). This Endorsement has a $25,000 applicable limit to a covered loss "arising from" an assault and battery.  DE 31-3.  After reviewing the

record, and considering the parties' arguments, the Court finds that the Endorsement, which limits coverage for any claim "arising from" an assault and battery, is applicable to the Underlying Action.

In *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 539-40 (Fla. 2005), the Florida Supreme Court held that the term "arising out of" is to be construed broadly, concluding that it is equivalent to the terms "originating from," "having its origins in," "growing out of," "flowing from," "incident to," or "having a connection with." This Court concludes that "arising from" falls within the same category. Applying *Taurus* to this case, Mr. Arana's negligence claims against Seductions were clearly "incident to," "had a connection with," "grew out of," "had its origin in," "flowed from," and hence "arose from" the assault and battery alleged in the Underlying Action. *Id.*, DE 4-3, ¶ 10.

In the specific context of assault and battery exclusions, other Florida courts have addressed this issue and held that related negligence claims "arose from" the assault and battery. *See e.g., Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 404 (Fla. Dist. Ct. App. 1998) ("[a]n assault and battery exclusion in a liability policy precludes coverage for the negligence of the insured which arises as a result of the assault and battery"); *Miami Beach Entertainment, Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161, 162 (Fla. Dist. Ct. App. 1996) (holding summary judgment based upon policy exclusion proper where claim based on negligence arose out of assault and battery); and *Britamco Underwriter's, Inc. v.*

*Zuma Corp.*, 576 So. 2d 965, 965 (Fla. Dist. Ct. App. 1991) (finding that bar customer who was injured by an assault and battery was not entitled to coverage even though patron obtained a judgment based on legal theory of negligence in failing to provide adequate security because policy excluded coverage for claims which arose out of an assault and battery).

Defendants argue that the above cited cases are inapposite because the exclusion sued upon in each instance also contained an explicit exclusion for negligence. The Court rejects Defendants' contention. The fact that the policies excluded coverage for negligence was not the basis for the courts' rationale in reaching their decisions. In each of the three cases cited above, the decision was rendered without consideration or discussion of the exclusion for negligence. The courts reached their conclusions based on the fact that the injuries *arose out of* an assault and battery.

In this case, the language of the insurance policy and the factual allegations in the Underlying Action all arise out of an assault or battery. Therefore, the Endorsement which states that $25,000 is the policy limit for any claim "arising from" an assault and battery (per occurrence) is applicable to the Underlying Action. Thus, Century's Motion for Summary Judgment is granted on this point.

2.      **Operations Necessary or Incidental to the Running of Seductions**

Form CGL 1711 0406 titled, Limitation of Coverage to Specified Classifications, Operations, Premises, or Projects, provides in pertinent part:

> The following new part is added to Section I - Coverages, Coverage A. Bodily Injury and Property Damage Liability, 1. Insuring Agreement. [Providing coverage for bodily injury and property damage if:]
>
> 1.b.(4)   The "bodily injury" or "property damage" arise from:
>
> (a)   The classifications or operations shown above [adult night club]; or any operations necessary or incidental to those classifications or operations shown above;
>
> (b)   The ownership, maintenance or use of the premises shown above and operations necessary or incidental to those premises; or
>
> (c)   the projects shown above [none].

DE 38-9.  Seductions asserts this form is applicable because the security services provided by doormen, security personnel, or bouncers are "operations necessary or incidental" to the operation of a gentlemen's club that serves alcohol to its patrons. Thus, Seductions contends that Mr. Arana's injuries arose from an inappropriate provision of security services by the insured's doormen, security personnel, or bouncers and therefore coverage is available under this provision of the Policy.  This argument is rejected because an assault and battery is not an operation necessary or incidental to the running of an adult night club.

### 3.   Wrongful Eviction

Form CGL 1701 0705 titled, Special Exclusions and Limitations Endorsement, provides coverage for:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a.   False arrest, detention or imprisonment;

      b.      Malicious prosecution;

      c.      *the wrongful eviction from*, wrongful entry into, or *invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor*; or

      d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services.

DE 38-12 at 6 (emphasis supplied). The Defendants argue that because Mr. Arana suffered personal injury while being physically forced out of and ejected from Seductions, the Policy provides coverage under the provision for a "wrongful eviction." In support of this argument, Defendants cite to *Accredited Bond Agencies, Inc. v. Gulf Ins. Co.*, 352 So. 2d 1252 (Fla. Dist. Ct. App. 1977) for the proposition that a plaintiff does not need to allege that he has a possessory interest in the property at issue in order for a duty to defend to apply.

      In *Accredited Bond Agencies*, the plaintiffs alleged that a bail bond agent accosted a minor family member in the doorway of the family home, thrust a pistol against the minor's stomach and threatened him in a menacing manner. The court held that the insurer had a duty to defend, finding an allegation of a "wrongful eviction." *Id.* at 1254.

      First, the *Accredited Bond* decision provides no reasoning for its conclusion. More importantly, however, in *Accredited Bond*, the injured party had a possessory interest and a right to occupy the family home. In the instant action, Mr. Arana

alleges no possessory interest in the insured's bar.

On the other hand, Century argues that the personal injury offense of "wrongful eviction," in the context of a commercial general liability policy, applies only to injury or damage suffered by one with a possessory interest in property, as in the case of landlord-tenant disputes.  The parties concede there is no Florida case law addressing whether the removal of a business invitee from an establishment open to the public falls under the definition of "wrongful eviction" under a liability insurance policy.  Century, however, relies upon two cases from the Southern District of Florida, and several non-binding cases from other states which, in the absence of Florida law, provide some guidance and are persuasive.  The two Southern District of Florida cases are *Wackenhut Services, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 15 F. Supp. 2d 1314 (S.D. Fla. 1998) and *City of Delray Beach v. Agricultural Ins. Co.*, 936 F. Supp. 931 (S.D. Fla. 1994) *affirmed by City of Delray Beach v. Agricultural Ins. Co.*, 85 F.3d 1527, 1534 (11th Cir. 1996).

In *Wackenhut,* the Essex Corporation lost its government contract to operate a training center at Kirkland Air Force Base.  Essex sued its competitor, Wackenhut, over the loss.  One of the questions in *Wackenhut* was whether a duty to defend under the "Personal Injury for Wrongful Eviction" clause of the policy was triggered by Essex's allegation that during the time Wackenhut had inappropriately held the contract, Essex had been "ousted" from the facility and not allowed to train there.  If this ouster was a wrongful eviction, then the duty to defend applied.

This Court noted that "[w]rongful entry or wrongful eviction cases, however, generally involve something lacking in this case:  either a defendant landlord who wrongfully evicts a plaintiff tenant or licensee; or a plaintiff who is an owner of real property, or holds a tenancy or easement in real property, who complains either of wrongful eviction by an owner or landlord, or wrongful entry by another in derogation of the plaintiff's ownership, tenancy, or easement."  *Wackenhut*, 15 F. Supp. 2d at 1323.  The Court found the concepts of wrongful eviction and wrongful entry to be inapplicable where Essex never claimed to be an owner or tenant where its training was performed.  *Id*.

In *City of Delray Beach,* the city sued numerous defendants in state court for improperly disposing of waste solvents and thus polluting the city's groundwater.  The city then sued the defendant's insurers for a declaration that the allegation triggered coverage under the "wrongful entry or eviction or other invasion of right of private occupancy" in their respective policies.  The Eleventh Circuit Court of Appeals noted that in Florida "invasion of the right of private occupancy means an offense tantamount to wrongful entry or eviction and requires an impingement upon possessory rights" and "[w]here, as here, no intent to occupy the property has been shown, and indeed no interference with possession has occurred, there can be neither wrongful entry nor eviction."  *City of Delray Beach*, 85 F.3d at 1534.

The courts in both *Wackenhut* and *City of Delray Beach* denied coverage, and reasoned that the allegations did not trigger the specified coverage unless a

possessory interest existed. Neither case involved a situation in which a business invitee, with a legal right to be present on the property, was forcefully removed therefrom.

Defendants assert that any adult nightclub owner purchasing this coverage would reasonably believe it would protect it for injuries arising from negligent provision of security in removing patrons from its establishment. Defendants argue that it does not make sense for Century to have sold a policy provision that provides coverage only to one with a possessory interest in the property, when no such landlord/tenant relationship exists for the patrons that frequent Seductions.

Two cases from outside Florida faced with similar facts as the instant case are persuasive. *See STK Enterprise, Inc. v. Crusader Ins. Co.*, 14 P.3d 638 (Or. App. 2000) (bar and restaurant's personal injury coverage for wrongful eviction did not cover bar's alleged refusal to admit prospective black patrons; patrons had no possessory interest in bar and restaurant); and *Rockgate Management Co. v. CGU Insurance, Inc./PG Insurance Co. of NY*, 88 P.3d 798 (Kan. App. 2004) (wrongful eviction requires at least temporary possession of the premises). *See also, Patel v. Northfield Ins. Co.*, 940 F.Supp. 995 (N.D. Tex. 1996).

In the case of *STK Enterprise, Inc. v. Crusader Ins. Co.*, 14 P.3d 638 (Or. App. 2000), an insured restaurant and bar brought a breach of contract suit against its insurer, seeking to recover costs of defending and settling three customers' claims of racial discrimination. To determine whether the insurer has a duty to defend an

action against the insured restaurant/bar under personal injury coverage for wrongful eviction, the *STK Enterprise* Court noted a flaw that is also present in the instant case. The *STK Enterprise* Court stated: "[t]he essential predicate to plaintiff's argument is that the policy offense of 'wrongful eviction' includes improperly removing a person from property where the person is legally present but in which the person has no possessory interest." *Id.* at 641. The court concluded that the Plaintiff's premise was erroneous and that the claimant must have a possessory interest in the property in order for the policy provision to apply. *Id.* at 642.

In *Rockgate Management Co. v. CGU Insurance, Inc./PG Insurance Co. Of NY*, 88 P.3d 798 (Kan. App. 2004), the plaintiffs claimed that a hotel refused to provide accommodations even though they had the right of occupancy based on confirmed reservations. In finding no coverage under the policy's "Personal and Advertising Injury Liability" for wrongful eviction, the *Rockgate* Court noted that at all relevant times, the plaintiffs were in the hotel lobby, attempting to check into the hotel, and that without occupancy, there could be no eviction. The Court held, "[i]t seems clear that a condition precedent to an action for wrongful eviction is that the person wronged must have been in at least temporary possession of the subject property." *Id.* at 751.

In the instant case, the complaint alleges that Mr. Arana, a business invitee of the insured at the time of the incident, was forcefully removed from the club. Nothing in the Complaint suggests that Mr. Arana even temporarily had a possessory

interest in the premises.  This is quite different from a situation where someone is provided a room in a hotel and is subsequently wrongfully evicted.  The key to interpreting the language "wrongful eviction," is an actual interference with possessory rights to real property.  *Id*.  As in *Rockgate*, in this case there was no occupancy or other possessory interest and the "wrongful eviction" language of the Policy does not apply to these facts.

**Limits of Medical Coverage**

Section III of the Commercial General Liability Coverage Form ("Coverage Form"), Limits of Insurance, states at Section 2:

> 2. The General Aggregate Limit is the most we will pay for the sum of:
>
>    a. Medical expenses under Coverage C [medical payments];
>
>    b. Damages under Coverage A [bodily injury and property damage liability], except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" and
>
>    c. Damages under Coverage B [personal and advertising injury liability].

DE 38-2 at 26-27.  Defendants argue this language is susceptible to more than one interpretation rendering it ambiguous, and that the Policy must therefore be construed in favor of Seductions and strictly against Century.  Accordingly, Defendants assert Mr. Arana should be able to recover up to the Policy's General Aggregate Limit of $2,000,000 for his medical expenses.  Century disagrees and asserts that medical expense coverage is clearly limited to $2,000.

The Policy's Declarations page [DE 38-2 at 9] shows the Each Occurrence Limit as $1,000,000, the Medical Expenses Limit as $2,000, and the General Aggregate Limit as $2,000,000.  Section III.7. of the Coverage Form states that "subject to" the General Aggregate Limit, the Medical Expense Limit ($2,000) is the most Century will pay under Coverage C (medical payments) for bodily injury "sustained by any one person."  *Id*.  Furthermore, the General Aggregate Limit is the most Century will ever pay under its policy for the sum of all amounts paid in connection with bodily injury, property damage, personal and advertising injury, and medical expenses no matter how many claims are brought (emphasis added).  The clear meaning of the Declarations page and Section III.2 is that no matter how many claims might implicate the $1,000,000 Each Occurrence Limit or the $2,000 Medical Expenses Limit, Century's policy will be exhausted when a total of $2,000,000 has been paid out in connection with any and all claims.  The term "Aggregate" is unambiguous.

The provision that the Medical Expense Limit is "subject to" the General Aggregate Limit indicates that the $2,000 is the most any one person can recover under Coverage C, assuming the General Aggregate Limit has not been met.  So, for example, if Century paid a claimant $1,000,000 for one occurrence under Coverage A [bodily injury and property damage] and $2,000 under Coverage C [medical payments], the remaining General Aggregate Limit would be $998,000.  If another claimant based on another occurrence subsequently recovered the $998,000 under Coverage A, that claimant could not also recover the $2,000 Medical Expense Limit

because that limit is "subject to" the General Aggregate Limit, which was exhausted by payment of the $998,000.  If, however, the second claimant recovered $900,000 under Coverage A, he could also recover up to $2,000 for medical expenses because the General Aggregate Limit had not been exhausted.  He could not, however, recover more than $2,000 for medical expenses because that is the policy limit for medical expenses for one person.  Defendants' contention that the policy language creates an ambiguity between it and the Declarations page is without merit.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants/Counter Plaintiffs' Cross Motion For Final Summary Judgment **[DE 43] is DENIED** and Century Surety Company's Motion For Summary Judgment **[DE 30] is GRANTED IN PART AND DENIED IN PART**.  It is granted to the extent that Century seeks a declaration that its duty to indemnify Seductions in connection with the Underlying Action is limited to the $25,000 sub-limit included in the Limited Coverage - Assault and Battery Endorsement.  It is denied to the extent that Century asks this Court to reform the Policy.  Any pending motions are denied as moot.  This case is closed.  The Court retains jurisdiction to consider any motion for costs.  A judgment incorporating this ruling shall be entered separately.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of March, 2009.

_____
KENNETH A. MARRA
United States District Judge

copies to:
All counsel of record
Magistrate Judge Linnea R. Johnson